Sherin v BVK HSRE Reit I LLC (2024 NY Slip Op 50025(U))

[*1]

Sherin v BVK HSRE Reit I LLC

2024 NY Slip Op 50025(U)

Decided on January 12, 2024

City Court Of Ithaca, Tompkins County

Wallace, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 12, 2024
City Court of Ithaca, Tompkins County

Zion N. Sherin, Claimant

against
BVK HSRE Reit I LLC, Defendant.

Docket No. SC-49561-23

Richard M. Wallace, J.

BACKGROUND
This action involves premises located at 112 Summit Street, leased by Defendant to Claimant. The premises is one bedroom in a unit of four bedrooms. Each bedroom is leased separately. On or about August 4, 2022, the parties signed the written lease, which was for a term starting on August 17, 2022 and ending on July 31, 2023.
On or about August 21, 2023, Claimant filed a small claim application seeking $5000.00, claiming, "Landlord failed to uphold basic standards and breached the contract."
A trial was held. Claimant testified as his only witness. Defendant called Hunter Brown, an operations specialist who handled some of Claimant's concerns, as its only witness.
Claimant testified that when he moved in he noticed that his bedroom had no lock on the door. Claimant was told before he moved in that his bedroom door would have a lock. He requested a bedroom lock at the apartment office and was refused. Claimant then asked for permission to install his own lock on the bedroom door and was refused. In May of 2023, Claimant's bedroom was broken into and he lost property. Claimant managed to collect $6000.00 from the thief but claims that the watch's model was worth $10,846.00 online.
Claimant testified that vomit was regularly present in the hallways on weekends. The apartment's maintenance team, however, does not work on weekends.
Claimant testified about the heat not working in 2022, when the weather was becoming cold. Individual heating units were provided to Claimant and other tenants affected by the faulty heating.
Claimant asserted various other claims, such as dissatisfactory cleanliness, a problem with his shower, and the broken sauna. He stated that the apartment was not "luxury" as advertised, and requests a rent abatement.

 NEGLIGENCE - BEDROOM LOCK
Claimant's claim, as it relates to the lack of a bedroom lock, may be treated as a "premises security" negligence case. Burgos v Aqueduct Realty Corp., 92 NY2d 544 (1998).
In order to prevail at trial in a negligence case, a plaintiff must establish by a preponderance of the evidence that the defendant's negligence was a proximate cause of plaintiff's injuries. A plaintiff is not required to exclude every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred Clearly, there is a need to balance a tenant's ability to recover for an injury caused by the landlord's negligence against a landlord's ability to avoid liability when its conduct did not cause any injury. There is no need, however, to create a special rule for premises security cases, since the burden regularly placed on plaintiffs to establish proximate cause in negligence cases strikes the desired balance . Thus, a plaintiff who sues a landlord for negligent failure to take minimal precautions to protect tenants from harm can satisfy the proximate cause burden at trial even where the assailant remains unidentified, if the evidence renders it more likely or more reasonable than not that the assailant was an intruder who gained access to the premises through a negligently maintained entrance.
Id. at 550-51.
Defendant acknowledged at trial the lack of a lock on the Claimant's bedroom door and explained that some premises were initially leased as entire units as opposed to individual bedrooms. However, it appears that even after these bedrooms began to be leased individually, locks were not placed on each individual bedroom door. Claimant inquired at the office about having a lock placed on his bedroom door and was refused. Claimant then asked for permission to install his own lock and was again refused. Thus, the Court finds it more likely than not that the intruder gained access to Claimant's premises through the bedroom door because it was negligently maintained by the landlord.
Defendant asserts as a defense the liability waiver contained in the lease. This waiver, found in paragraph 39 of the lease, purports to release the landlord from liability for "any and all claims, suits, actions, losses, costs, liabilities, and damages" and requires the Claimant to "look solely to any insurance carried by Resident covering such loss." This lease provision seems to be "an attempt by the lessor to shift liability for its negligent acts to the tenant," and not an agreement by the parties to "allocate the risk of loss to an insurer for their mutual benefit." Graphic Arts Supply, Inc. v Raynor, 91 AD2d 827, 827 (4th Dept 1982). The liability waiver is therefore void. General Obligations Law § 5-321.[FN1]

Claimant, however, failed to adequately establish the value of his stolen watch. To establish this, there must be some evidence of the property's value at the time of the loss, which can be shown by testimony about the property's original cost, age, and condition at the time of the loss. Samuel v 2345 Ocean Ave Assoc., LLC, 49 Misc 3d 138(A) (App Term, 2d Dept 2015). To be sure, a small claims court is not bound by the rules of evidence and a Claimant who is [*2]familiar with the property's quality and condition may testify as to its value. Id. Here, however, Claimant simply failed to offer such testimony. On the first day of trial, Claimant even admitted that it is hard to "put a price tag on these that everyone can agree upon, so it's very hard to put a value on something like an Omega watch." Claimant stated that if it was new, it would be around $10,000.00, but it would be hard to argue about its value if it is used, because it is considered a collectible watch. Claimant unambiguously stated, when asked by the Court, that "as far as the value goes, I would say 'no,' it's very hard to prove any of that without having the actual physical watch and get it evaluated." Claimant did testify that when he looked up the model of his watch online, he found it on sale for $10,846.00. However, this is not evidence showing the market value of Claimant's particular watch at the time of the theft.

 BREACH OF CONTRACT
The Court can discern no breach of contract other than the breach of the warranty of habitability discussed above. Paragraph 18 of the lease states that the lease "supersedes all prior written and verbal representations and agreements." This includes any representations about the "luxury" living at the apartments.
Claimant asserts that the lack of a bedroom key constituted a breach of contract. The Court disagrees. Even though Claimant alleged that one of Defendant's employees told him he would have a bedroom lock, paragraph 18 of the lease supersedes any such representation. Furthermore, Defendant's counsel argues that in the lease a bedroom key is only promised "if applicable," and this was not applicable to Claimant because his bedroom door did not originally have a lock. The Court agrees with Defendant's interpretation of the lease in this regard.

 MULTIPLE DWELLING LAW § 51-c
However, Multiple Dwelling Law § 51-c provides every tenant of a multiple dwelling with the "right to install and maintain or cause to be installed and maintained in the entrance door of his particular housing unit in such multiple dwelling, a lock, separate and apart from any lock installed and maintained by the owner of such multiple dwelling." Multiple Dwelling Law § 51-c. As already discussed, Defendant did not permit Claimant to install his own lock.
To be sure, Multiple Dwelling Law § 51-c does not explicitly provide for a private right of action. In such a situation, there can be recovery under the statute only if a legislative intent to create such a right of action may be "fairly implied" in the statute's provisions and legislative history. Ferris v Lustgarten Found., 189 AD3d 1002 (2d Dept 2020). There are three factors to such an inquiry: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." Id. The Court finds that all three factors are met here, and Claimant may recover under Multiple Dwelling Law § 51-c; "where there is no regulatory agency to otherwise enforce compliance with a statute, 'the recognition of a private right of action would do no harm.'" Id.
Despite the rights set forth in Multiple Dwelling Law § 51-c, Defendant denied Claimant's request to install his own bedroom lock. Defendant had already refused to install its own lock on Claimant's bedroom door. In effect, Defendant forced Claimant to live in an unsecured bedroom. Subsequently, Claimant suffered a break-in and the loss of his grandfather's watch. For this reason, the Court awards Claimant $1000.00 as punitive damages, to do substantial justice between the parties. UCCA § 1804; see Robles v Bartlett Bldg. Corp., 4 Misc 3d 129(A) (App Term, 2d Dept 2004) (awarding punitive damages in a small claims action [*3]despite the absence of any showing of actual damages).

 WARRANTY OF HABITABILITY
The warranty of habitability applies to the leased premises and "all areas used in connection therewith in common with other tenants or residents" and warrants that they "are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety." RPL § 235-b(1). However, "a landlord is not a guarantor of every amenity customarily rendered in the landlord-tenant relationship. The warranty of habitability was not legislatively engrafted into residential leases for the purpose of rendering landlords absolute insurers of services which do not affect habitability." Park West Management Corp. v. Mitchell, 47 NY2d 316 (1979).
The Court finds that vomit regularly left in the hallway on weekends affects habitability. Even though vomit is an act of third parties and the maintenance crew does not work on weekends, the Court of Appeals has noted that because RPL § 235-b "places an unqualified obligation on the landlord to keep the premises habitable, conditions occasioned by ordinary deterioration, work stoppages by employees, acts of third parties or natural disaster are within the scope of the warranty as well." Park West Management Corp., 47 NY2d 316. Even if the regular presence of vomit is an unfortunate fact of life in a college apartment, the Court finds that it nonetheless "materially affect[s] the health and safety of tenants." Id. Defendant advertises luxury apartments to college students, and it would not be unreasonable for Defendant to hire maintenance personnel on the weekends. The Court awards a rent abatement of $500.00.
None of the other conditions asserted by Claimant affect the health and safety of tenants. For example, although the wall-mounted heaters were not working, the landlord provided portable heaters while repairs were underway. Claimant failed to demonstrate how the unavailability of the sauna impacted his health. Claimant also failed to demonstrate that the shower construction was related to a breach of the warranty of habitability.

 CONCLUSION
Judgment is for the Claimant in the amount of $1500.00, plus costs.
This constitutes the Decision and Order of the Court entered upon notice to both parties. A notice of appeal, if applicable, must be filed within thirty (30) days of service of this Decision and Order.
SO ORDERED.
Dated: January 12, 2024
Richard M. Wallace
Ithaca City Court Judge

Footnotes

Footnote 1: Although most of the case law about General Obligations Law § 5-321 relates to commercial leases, the Court can find no authority stating that this statute does not apply to residential leases. Indeed, by a plain reading of the statute, General Obligations Law § 5-321 applies to "any lease of real property." This includes residential leases. Daniel Finkelstein & Lucas A. Ferrara, Landlord and Tenant Practice in New York § 10:22 (West's NY Prac Series, vol F, Dec. 2023 update).